IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KAREN MCKNIGHT DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:11-cv-900-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On May 29, 2008, Karen McKnight Dixon ("Plaintiff" or "Dixon") filed a Title II application for a period of disability insurance benefits (DIB) alleging disability began on January 1, 2008. (Tr. 26, 88). Dixon's application was denied at lower levels of determination. Dixon timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on November 23, 2010. (Tr. 16-29). The Appeals Council denied Dixon's request for review, which made the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). (Tr. 1). Pursuant to 28 U.S.C. § 636 (c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

# I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.

1986)).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  There is no presumption that the Commissioner's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 51 years old on January 1, 2008, the date she alleges she became disabled and 53 years old on the date of the ALJ's decision. (Tr. 147). Dixon obtained her GED and attended college for Cosmetology. (Tr. 37). Her past work experience includes cutting hair, driving a school bus, working as a cashier in a convenience store and a fast food restaurant, working as a laborer and iron worker. (Tr. 37-40). Dixon testified at the hearing before the ALJ that she has problems sitting, standing and walking due to the pain in her back. (Tr. 41). She also testified that she suffers from pain in her legs and scoliosis. (Tr. 44, 52). She stated that her pain level was an eight on a scale from zero to ten; ten being the worst pain. (Tr. 52). Dixon further stated that she could only stand for 30 to 45 minutes, walk for 30 minutes and sit for 20 or 30 minutes at one time. (Tr. 52).

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

Dixon testified that she lays down a couple of hours a day and has problems sleeping because of pain. (Tr. 52, 53). She also testified that she suffers from headaches. (Tr. 54). She indicated that she has headaches two to three times a month that last for two to three days. (Tr. 54). She said that the headaches have caused her to "get sick to my stomach and throw up." (Tr. 54). She also said that she is "not financially able to" seek treatment and that she takes over the counter medications including BC headache powders. (Tr. 47).

Dixon testified that she does a "little bit of cleaning", cooking, and washing clothes, but that it takes her longer to complete these tasks than it once did. (Tr. 48 and 53). Dixon said that she tries to tend a garden with the assistance of her husband. (Tr. 48-49). Dixon also said that she is able to shop for groceries and personal needs as long as she holds onto a buggy. (Tr.49). Dixon testified that on Saturday mornings she goes to the flea market, but that it takes her a couple of hours because she has to take breaks. (Tr. 51). Dixon further testified that she hurts more after she gardens or goes to the flea market. (Tr. 53).

At the hearing Gail Jarrell, a vocational expert, ("VE") testified that Dixon's past work was light to heavy in exertion and ranged from skilled to unskilled in nature. (Tr. 56-57). The ALJ proposed a hypothetical scenario to the VE which supposed an individual with the same age, educational background, and work experience as Dixon with certain limitations. (Tr. 57-58). The VE indicated that the hypothetical individual would be unable to perform any of Dixon's past work. (Tr. 58). However, the VE testified that the same individual could perform jobs of a general office clerk (DOT Code

209.562-010); companion (DOT Code 309.677-010); and small products assembler one (DOT Code 706.684-022). (Tr 58-59). The VE further testified that the same individual could perform those jobs while being limited to occasional stooping. (Tr. 59). The VE also testified that the same individual could perform those jobs although limited by pain which would be expected to cause deficits in concentration, persistence, or pace. (Tr. 59-61). The VE also testified that the same individual could perform those jobs with the additional restriction of limited exposure to extreme temperatures, wetness, humidity and dust and gases. (Tr. 62). However, the VE testified that the same individual limited by pain and headaches, which would cause work absence approximately three days per month, would be unable to perform any job. (Tr. 62).

The ALJ found Dixon met the insured status requirements of the Social Security Act through December 31, 2012. (Tr. 18). She further found that Dixon had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. (Tr. 18). The ALJ concluded that Dixon's severe impairments included headaches, metabolic syndrome, degenerative disc disease, stenosis, scoliosis, chronic obstructive pulmonary disease, sciatica, sleep apnea, restless leg syndrome and hypertension. (Tr. 18). She assessed Dixon as having the residual functional capacity ("RFC") to perform the following:

> [L]ight work as defined in 20 CFR § 404.1567 (b) except the claimant must sit or stand periodically as the workstation; can never push or pull with the legs; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally kneel or stoop; can never crawl or squat; can never work at unprotected heights; must avoid concentrated exposure to temperature extremes, wetness, humidity, noxious fumes, dust, gases. The

claimant would have deficits in concentration, persistence or pace that would limit her to perform short, simple tasks.

(Tr. 20). The ALJ found Dixon is unable to perform her past work as a cosmetologist (DOT Code 332.271-030); cashier (DOT Code 211.462-010); school bus driver; (DOT Code 913.463-010); ironworker apprentice (DOT Code 801.361-018); fast food worker (DOT Code 311.472-010); and construction laborer (DOT Code 869.664-014). (Tr. 24).

The ALJ noted that Dixon was born on December 27, 1956 and was 51 years old, on the alleged disability onset date. (Tr. 25) She found that Dixon had at least a high school education and is able to communicate in English. (Tr. 25). She found that Dixon was able to perform the jobs of companion (DOT Code 309.677-010); small products assembler (DOT Code 706.684-022); office helper (DOT Code 239.567-010); and hand packager (DOT Code 753.687-038). (Tr. 26). She concluded that Dixon has not been under a disability as defined by the Social Security Act from January 1, 2008. (Tr. 26).

## IV.  MEDICAL HISTORY

On January 28, 2008, Plaintiff saw Dr. Henry H. Barnard, of NeuroSpine, P.C. for back pain. He reports that Plaintiff has exhausted "virtually every non surgical treatment" available for her pain, but that her pain "remains persistent". (Tr. 219). Upon physical examination, Dr. Barnard reports Dixon

> "is healthy and fit appearing in general. She can heel and toe stand without difficulty. She can bend forward and just about touch her toes. She has no focal motor or strength deficits, reflex asymmetry or sensory changes. On extremity exam she has good pules. No pathologic reflexes."

*Id.*

Dr. Barnard reports that her MRI shows "at least some stenosis at L4-5, but this is not so obviously severe . . . to make the definitive recommendation for surgery." *Id.* Dr. Barnard recommended that Dixon undergo a "myelogram CT scan" and consider surgery if the scan "shows something that would be severe enough." *Id.* After the CT scan was performed Dixon saw Dr. Barnard again on February 15, 2008. (Tr. 218). Dr. Barnard noted it "really did not show any significant abnormalities." *Id.* Dr. Barnard advised that surgery "is anything but a guarantee of success" and that "it is perfectly safe to live with the pain". Dr. Barnard further advised her to exercise regularly and to quit smoking. *Id.*

On June 9, 2009, Dixon saw Dr. Richard V. Meadows, D.O. for a consultative exam. (Tr. 306-309). Dr. Meadows reported

> Patient has tenderness in the lumbosacral area. She has straight leg positive at 70 degrees bilaterally. She walks with a tandem gait. She is not able to toe walk or heel walk. Romberg's is positive. DTR's are 2/4 and bilaterally equal. Muscle strength is graded to be 5/5 in the grips, biceps, triceps, quadriceps, hamstrings and gastrocnemius muscles. The patient does have difficulty with squatting, stooping, and squats approximately half the way and complains of [sic] severely of back pain.

(Tr. 309). His "Impressions" include that Dixon has "back pain", "[d]egenerative disc disease with evidence of spinal stenosis in L4-5 area", and "suggestive symptoms of radiculopathy with sciatica bilaterally." *Id.*

Dixon underwent a second consultative medical examination by Dr. Keith G Vanderzyl, Jr. On November 2, 2010 (Tr. 339-341) and at this time he also completed a form entitled "Medical Source Statement of Ability to do Work-Related Activities (Physical)" (Tr. 345-350). Upon physical examination of her spine, Dr. Vanderzyl reported that Dixon has normal cervical and dorsal spine conformation with full range of

motion without pain in both her cervical and dorsal spine and lower extremities. (Tr. 340). However, with respect to the lumbar spine he reported

> [s]he holds her lumbar spine absolutely rigid. She does not allow any motion because of severe pain and this is in all degrees of freedom. It is noted that there is no obvious muscle spasm present in her low back. Her pelvis is level. Her leg lengths are equal.

*Id.* Upon neurological examination of Dixon, Dr. Vanderzyl reported

> [m]uscle strength is grade 5 strength in the upper and lower extremities. She walks with a normal heel-to-toe gait. She can walk both on her forefeet and her heels. She has downgoing Babinski sign bilaterally and a negative Romberg sign. She has negative straight leg raising. Contralateral leg raise.

(Tr. 341). His "Impressions" include "Scoliosis by history," though not confirmed by physical examination; "Low back pain, etiology unestablished"; "Recurrent migraine headaches." *Id.*

In the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form completed by Dr. Vanderzyl, he concluded that Dixon could lift and carry up to 10 pounds over two-thirds of the time during a regular work week;[5] lift and carry up to 20 pounds one third to two thirds of the week; lift and carry up to 50 pounds up to one-third of the week, but never lift more than 50 pounds. (Tr. 345). Dr. Vanderzyl also concluded that Dixon could sit, stand and walk 2-4 hours "at one time without interruption" and that she could sit, stand and walk 6-8 hours "total in an eight hour work day." (Tr. 346).

He also found that Dixon could reach overhead with her right and left hand one-third to two-thirds of the week and that she could perform all other reaching, handling,

---

[5] The regular work week is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."(Tr. 345)

fingering, feeling, pushing and pulling over two-thirds of the week. (Tr. 347). Dr. Vanderzyl also concluded that Dixon could operate foot controls with either foot one-third to two-thirds of the week. *Id.* He further found Dixon could stoop, kneel, crouch and crawl from one-third to more than two-thirds of the week; she could balance more than two-thirds of the week; she could climb stairs and ramps from one-third to two-thirds of the week; and climb ladders or scaffolds up to one-third of the week. (Tr. 348). Additionally, he found Dixon could tolerate exposure to vibrations only up to one-third of the time. (Tr. 349). Finally, he found Dixon could perform activities like shopping, traveling without assistance, preparing simple meal and sorting or handling paper files. (Tr. 350).

## V. Issues

Dixon raises three issues for judicial review:

(1) Whether the Commissioner's decision should be reversed because prior to relying on the vocational expert's (VE) testimony, the ALJ failed to explain the inconsistency between the VE's testimony and the Dictionary of Occupational Titles (DOT)? (*See* Doc. 11 at 6).

(2) Whether the Commissioner's decision should be reversed because the ALJ failed to properly apply the three-part pain standard established by the Eleventh Circuit for adjudicating complaints of pain? (*See* Doc. 11 at 6).

(3) Whether the Commissioner's decision should be reversed because the ALJ failed to properly consider Dixon's credibility? (*See* Doc. 11 at 6).

## VI. DISCUSSION

**The ALJ properly explained any inconsistency between the VE's testimony and the DOT.**

Dixon argues that the ALJ erred because the VE's testimony was inconsistent with the DOT and that the conflict was not properly resolved or explained by the ALJ. *See* Pl.'s Br. At 6 (citing SSR 00-4p; 2000 WL 1898704, at *2-3). SSR 00-4p provides that an ALJ should obtain a "reasonable explanation" for any "apparent unresolved conflicts" between a vocational expert's testimony and the information in the DOT. The VE testified that her testimony was generally consistent with the DOT and that a variation from the DOT, specifically with respect to the sit/stand option, was based on the job descriptions and her own knowledge of the positions she had identified as a job developer, career counselor for the federal government and as a rehabilitation consultant doing on-site job analysis. (Tr. 62-63). The Court notes that immediately following the VE's explanation about the variation from the DOT with respect to the sit/stand option, Dixon's counsel waived further questioning. (Tr. 62).

Notably, SSR 00-4p also provides that "[e]vidence from [vocational experts] can include information not listed in the DOT" and that [i]nformation about a particular job's requirements . . . may be available . . . from a [vocational expert's] *experience in job placement or career counseling."* SSR 00-4p, 2000 WL 1898704, at * 2-3 (emphasis added). Indeed, the VE in this case properly based her testimony upon her professional experience, about which Dixon's counsel proffered no questions. (Tr. 62-63). Moreover, since neither Dixon nor her counsel identified any significant unaddressed conflicts

between the VE's testimony and the DOT during the hearing, the ALJ did not err in relying upon the VE's testimony. Furthermore, the court is persuaded, that because no physician, treating or consulting, opined that Dixon is unable to work because of her impairments, substantial evidence supports the ALJ's finding at step five. *Miles v. Chater*, 84 F.3d at 1400. Even were the Court to conclude that the ALJ should have given more and better reasons for crediting the VE's testimony, the error was harmless and is not a basis for reversal of the ALJ's decision. *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983)(holding an error is harmless error where appropriate facts are applied to reach a conclusion and that is supported by the record.)

### The ALJ Properly applied Regulations and Case Law in Adjudicating Plaintiff's Subjective Complaints of Debilitating Pain and in doing so Properly assessed Plaintiff's Credibility

Dixon argues that the ALJ erred in making a determination of her credibility because she failed to properly apply the three-part pain standard. The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C.§ 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively

determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

The ALJ retains discretion not to credit the claimant's testimony of pain and other symptoms. *See Holt,* 921 F. 2d at 1223.  When the ALJ decides not to fully credit the claimant's testimony, the ALJ must articulate the reasons for that decision.  *Id.*  In other words, even where the medical record includes objective evidence of pain, and where the ALJ acknowledges that the claimant experiences some pain, the ALJ may conclude that the degree of pain is not disabling in light of all the evidence.  *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).  Indeed, it is not inconsistent for the ALJ to find a claimant suffers pain, and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act.  *See Arnold v. Heckler,* 732 F. 2d 881, 884 (11th Cir. 1984).

In her decision, the ALJ concluded

> "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

(Tr. 21).  She further found that Plaintiff's subjective complaints were not consistent with her activities of daily living, objective medical evidence, and other evidence in the record and she fully explained her rationale.  (Tr. 21-24).  Indeed the ALJ noted that Plaintiff gardens, cleans, cooks, washes clothes, shops for groceries and personal needs, attends church and flea markets.  (Tr. 22; 48-52); .  In short, Dixon's non-work activities do not support her claims of debilitating pain.  *See Dyer v Barnhart,* 395 F.3d 1206, 1212 (11th

Cir. 2005.) (consideration of claimant's daily activities, symptom frequency, and medication types and dosages were sufficient reasons for finding plaintiff not credible.) Accordingly, the court concludes that Dixon's self-reported activities of daily living support the ALJ's decision to discredit her complaints regarding the intensity, persistence, and limiting effects of that pain.

In her decision, the ALJ also found that the medical evidence contradicts Plaintiff's subjective complaints of disabling back pain. (Tr. 21-24). Specifically, the ALJ considered and discussed Plaintiff's alleged back pain. *Id.* For example, she noted Plaintiff's x-rays of her lumbar spine in June 2008 showed that there is scoliosis, but only "mild degenerative changes." (Tr 21, 296). Then in January, 2008, Dixon had a lumbar CT myelogram that showed a mild disc bulge and mild stenosis at L3-4. Dr. Barnard stated that the lumbar myelogram "did not really show any significant abnormalities." (Tr. 21, 218-219). *See* SSR 96-7P, 1996 WL 374186, at *6-7 (stating an ALJ may consider the objective medical evidence in evaluating credibility.)

Indeed, the ALJ observed that neither Dr. Barnard, the treating physician, nor Dr. Meadows and Dr. Vanderzyl, both consulting physicians, opined that Dixon was unable to work. (Tr.22-23). Moreover, the ALJ noted Dr. Barnard's opinion that in January, 2008, Dixon was able to work. (Tr. 24, 219). Rather, the ALJ explained that based on Dr. Vanderzyl's functional assessment and considering the opinions of Drs. Meadows[6]

---

[6]The court recognizes that Dr. Meadows did not complete a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" or other similar form and that there are a number of inconsistencies between the medical reports of Dr. Meadows and Dr. Vanderzyl. However, for the reasons explained herein, the court is persuaded that the ALJ correctly balanced the assessments of each doctor as they pertained to Dixon's ability to work.

and Barnard, Dixon could perform light work.  (Tr. 22-23).  Moreover, the ALJ noted that Dr. Barnard advised Dixon to exercise on a regular basis, which is inconsistent with Dixon's testimony at the hearing that she cannot sit, stand or walk long.  (Tr. 21, 41).  *Anderson v. Astrue,* 2007 WL5002066 at *12 (N.D. Fla. Nov. 9, 2007) Report and Recommendation adopted by *Anderson v. Astrue,* 2008 WL 74032 (N.D. Fla. Mar. 11, 2008) (where the ALJ articulated inconsistencies between Plaintiff's testimony regarding her subjective complaints and other record evidence, the ALJ's credibility finding was affirmed.)

The evidence before the ALJ also reveals Dixon had not sought treatment in approximately the one year prior to the hearing and that she had not sought treatment from low-cost or free clinics.  (Tr. 21, 45-46).  Specifically, with respect to her headaches, Dixon testified that she took only over the counter BC powders.  (Tr. 21, 47).  She explained that she had taken narcotics in the past, but that at the time of the hearing she was unable to afford her co-payment.  (Tr. 21, 47-48).  However, Dixon also testified that there was not a change in her finances between the time of the hearing and the periods in the past when she received more treatment.  (Tr. 21, 46).  *Anderson, id.*  Ergo, it was reasonable for the ALJ to find Plaintiff's subjective complaints of disabling pain lacked credibility.  (Tr. 28).  *Jones v. Bowen,* 810 F.2d 1001, 1004 (11th Cir. 1986).  (affirming Commissioner's credibility determination given absence of treatment and pain medications for alleged symptoms.)  Accordingly, the court concludes that because of the ALJ's reasons, which were supported by record evidence, Dixon's argument that the ALJ did not properly articulate and apply the Eleventh Circuit's pain standard must fail.  *See*

*Wilson v. Barnhart,,* 284 F. 3d 1219, 1227-28 (11th Cir. 2002). (upholding ALJ's credibility evaluation which discounted plaintiff's "subjective assertions of pain.")

.   **The ALJ's Residual Functional Capacity Assessment was Reasonable.**

A residual functional capacity assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations.  *See* 20 C.F.R. § 404.1545(a)(1) (2010).  An RFC assessment will be made based on all relevant evidence in the case record.  *Id.*; *Lewis v. Callahan*, 125 F.3d at 1440.  The Commissioner's decision is due to be affirmed "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel,* 185 F. 3d 1211, 1213 (11th Cir. 1999).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore v. Barnhart,* 405 F. 3d 1208, 1211 (11th Cir. 2005).

In the instant case, the ALJ specifically stated that she carefully considered all of the record evidence, and the court finds that she thoroughly summarized and properly analyzed the medical evidence.  (Tr. 20-24; Finding No. 5).  Indeed the ALJ accorded significant weight to the opinion of Dr. Vanderzyl.  (Tr. 24).  As discussed more fully above, his opinion was well supported by and mostly consistent with the evidence as a whole.  Furthermore, the ALJ accorded some weight to the opinion of Dr. Meadows who opined that Dixon has trouble bending and stooping.  However, the ALJ recognized that the extent of the limitations reported by Dixon to Dr. Meadows are inconsistent with Dixon's own testimony including that of her daily living.  Furthermore, even though Dr. Meadows opined that Dixon has symptoms suggestive of "radiculopathy and spinal

stenosis" the ALJ concluded that the limitations alleged by Dixon are not substantially supported even by Dr. Meadows' assessment, given "the consistent mild findings identified throughout her treatment". (Tr. 24). Additionally, the ALJ reasonably pointed out that in January 2008, Dr. Barnard, Dixon's treating physician, noted that Dixon retained the ability to engage in work activity. (Tr. 219). Accordingly, the court concludes that a reasonable person would accept the evidence presented as supporting the conclusions of the ALJ. Thus, substantial evidence supports the ALJ's opinion. *Moore, ,* 405 F. 3d at 1211.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 25th day of June , 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE